Eastern District of Kentucky
FILED
SEP 2 2 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-CV-371-JMH

JAMES H. VAN OVER                                                               PLAINTIFF

VS:                  **MEMORANDUM OPINION AND ORDER**

JOE W. BOOKER, ET AL.                                           DEFENDANTS

      James H. Van Over, an individual presently confined in the custody of the Bureau of Prisons ("BOP") at the Federal Medical Center (FMC) in Lexington, Kentucky, has filed a *pro se* civil rights complaint under 28 U.S.C. §1331 and pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). An accompanying motion to proceed herein *in forma pauperis* will be granted by separate Order.

      The complaint is now before the Court for initial screening. 28 U.S.C. §§1915(e) and 1915A(b); *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

## CLAIMS

      The plaintiff claims that the defendants' response to his heart condition (1) demonstrates deliberate indifference to his serious medical needs, in violation of the Eighth Amendment; (2) impermissibly discriminates against him because it is based on his incarceration; (3) is part of a civil conspiracy, compensable under 42 U.S.C. §§1985-86; and (4) has been negligent.

## NAMED DEFENDANTS

      As defendants, the plaintiff has named the following in their official and individual capacities: FMC-Lexington's (1) Warden Joe W. Booker, (2) Clinical Director Dr. Michael J.

Growse, and a cardiologist under contract to the BOP; (3) Dr. David C. Booth. Additionally, he names as defendants (4) the University of Kentucky Medical Center, (5) the Gill Heart Center located at the Medical Center, (6) Dr. Robert Metzer of the Gill Heart Center, and Gill Center Directors (7) Tyler Gill and (8) Victor Ferraris.

## RELIEF REQUESTED

The plaintiff seeks damages; a declaration; and injunctive relief, including an emergency preliminary injunction directing that Defendants Booth, the U. K. Medical Center, Gill and Ferraris immediately cause him to be evaluated for placement on a heart transplant list ("HTL").

## FACTUAL ALLEGATIONS IN TWO CASES

The instant lawsuit is not the first which James H. Van Over[1] has filed in this Court. On June 21, 2004, with counsel, he and Alton Dane Hudnall, both confined at FMC-Lexington, Kentucky, instituted *Hudnall v. Booker*, Lexington Civil Action No. 04-CV-278-JBC. Both set out their terminal heart conditions, Van Over having been on Lexington's transplant list in 1999 and removed upon his conviction and incarceration. They claimed this Court's jurisdiction under 28 U.S.C. §2241 and sought immediate release, either via (1) commutation of their sentences under Federal Rule of Criminal Procedure 35, or, in the alternative, (2) an order directing the respondent warden and the BOP to move for their compassionate release.

The documentary evidence submitted in the habeas proceeding included a copy of the warden's May 14, 2004 denial in Administrative Remedy No. 332567. In it, the warden stated that Van Over had not met the criteria for compassionate release and that no transplant program in the

---

[1] According to documents in the records of both his past and his current case, the plaintiff's full name is James Hobert Van Over, Inmate Number 28849-048.

2

country would accept prisoners. On December 6, 2004, this Court ultimately denied relief on several grounds, including the petitioners' failure to exhaust the administrative remedy process, the well-known judicially imposed prerequisite for filing a §2241 petition for Court review. Record No.15.

Nine months later, on September 7, 2005, Van Over filed the instant *Bivens* action, based on the same facts and expanded to reach 8 defendants. He has attached the same May 14, 2004 response from the Warden in Administrative Remedy 332567. Additionally, he provides a copy of his purported appeal of that response to the BOP regional director. Ex. 4. This appeal was dated June 2, 2004, and the plaintiff explains herein that he received the attached June 10, 2004 notification that it was received in the director's office (*Id.*), but he never received a ruling from that office.

This time, the plaintiff claims that because he never received a ruling on the appeal to the regional director, he could not appeal to the national office. He charges that such failure to respond to appeals is a frequent trick of the BOP to stonewall the prisoners' administrative efforts. Additionally, the plaintiff argues that the Court should not require exhaustion at this late date because exhaustion would be futile; he will die by the time he exhausts; and there is no exhaustion requirement for damages.

## DISCUSSION

Before considering the merits of the claims made herein, the Court must again begin with an examination of the same pre-condition, which not only petitioners but also prisoner-plaintiffs must meet in order to be properly before the federal court, *i.e.*, exhaustion of the BOP administrative remedy system.

3

As the plaintiff was instructed previously, the administrative remedies available to inmates confined in BOP institutions are set out at 28 C.F.R. §§542.10-.19 (1998) and consist of four steps. Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.* There is even an expedited procedure for any request "determined to be of an emergency nature which threatens the inmate's immediate health or welfare." *Id.*

As in his previous action, Plaintiff Van Over does not plead exhaustion of the BOP administrative process. He does claim herein to have pursued that process further, but pursuing relief to the third administrative level is not what is required under current law. Exhaustion must be "total." That is, a prisoner-plaintiff must pursue all four levels of appeal and every claim and every defendant must be raised administratively for exhaustion to be total. *See Williams v. Overton*, 2005 WL 1513102 at *3 (6th Cir. 2005) (unpublished) (citing *Jones-Bey v. Johnson*, 407 F.3d 801,

4

805 (6th Cir. 2005)). Failure to totally exhaust requires dismissal, even if some of the claims are clearly exhausted. *Id.*

There is a difference in the exhaustion requirement, but it dos not benefit Van Over. To the contrary, while the exhaustion requirement preceding a habeas action is a judicially created one, in conditions of confinement civil cases brought under 28 U.S.C. §1331, exhaustion has been mandated by the United States Congress. Effective April 24, 1996, Congress decreed that prisoners complaining of prison conditions must avail themselves of administrative remedies prior to initiating a lawsuit. 42 U.S.C. §1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Sixth Circuit has consistently insisted on compliance and a clear demonstration of compliance with the statute at the time of filing. *See Wright v. Morris*, 111 F.3d 414 (6th Cir. 1997), *cert. denied*, 522 U.S. 906 (1997). Thus, this is a statutory pre-requirement and one which since 1996 does apply to lawsuits for damages.

The exhaustion requirement is not a mere formality. As a practical matter, this means that a plaintiff must either attach copies of the documents from the administrative process or describe the administrative steps he took and responses he received in the process, with particularity. *Brown v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 117 S. Ct. 88 (1998); *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Unless the record demonstrates that the requirements of §1997e(a) have been met, a district court must dismiss the lawsuit without prejudice. *Id.*

In the case *sub judice*, therefore, it is the duty of this Court to enforce the statutory requirement. *Knuckles-El*, 215 F.3d at 642. The Court finds no merit to the plaintiff's alternative arguments that the requirement should be waived or forgiven or that the Court should direct the BOP to set a new deadline for him to finish Remedy No. 332567 by filing an appeal to the BOP national

5

office.

The plaintiff has created his own time pressure problem. More than a year before filing the instant lawsuit, in July of 2004, the plaintiff himself quit the administrative remedy process he had begun in Remedy No. 332567, despite the BOP's procedures' providing that if the inmate does not receive a response within the allotted time, he may consider the absence of response as a denial at that level. 28 C.F.R. §542.18. During that year there is no evidence that the plaintiff diligently pursued his claims or did anything. Additionally, as afore-stated, the procedures available to him include an ignored expedited option.

The Sixth Circuit has repeatedly underscored the underlying reasons for exhaustion, explaining that it is a statutory requirement and that "the importance of using the prison grievance process [is] to alert prison officials to problems." *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999); *see also Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Hartsfield v. Vidor*, 199 F.3d 305, 308-09 (6th Cir. 1999). In the case *sub judice*, it is the plaintiff's fault that the BOP national office has never had an opportunity to assess his needs and examine the local and regional responses thereto.

It must also be remembered that one of the reasons for the requirement that administrative remedies be exhausted is also to prepare a record for the Court. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). The instant plaintiff has not assisted the Court by providing a record. He has also not helped himself. His complaint must be dismissed, without prejudice. The Court expresses no opinion on the merits of his claims.

## MOTION

The plaintiff has sought preliminary injunctive relief in the form of an Order directing

6

Defendants Booth, the U.K. Medical Center, the Gill Heart Center and Directors Gill and Ferraris to immediately evaluate him for placement on a heart transplant list. While the instant disposition moots the matter, it is also the opinion of the Court that the request fails on the merits.

The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiffs could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)))).

Considering the factors in relation to the facts in this case, (1) Plaintiff Van Over's likelihood of success on the merits is questionable; indeed, it is questionable at this time whether the lawsuit will even proceed past the administrative remedies. Although factor (2), the possible death of the plaintiff, is clearly an irreparable injury which may occur soon, the time pressure is not of the defendants' making and could have been raised properly by the plaintiff himself more than a year ago. Therefore, it is not persuasive. As to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). No public interests would be served by choosing to interfere.

Finally, it bears remembering that the plaintiff was on the Lexington heart transplant list previously and caused himself to be removed from it by his own criminal conduct. He now seeks

to blame others for his loss of that placement and to ask the Court to bend procedures for a quick resolution to the current dilemma in which he finds himself.

## CONCLUSION

Accordingly, the Court being advised, **IT IS HEREBY ORDERED** as follows:

(1)  Plaintiff Van Over's motion for a preliminary injunction [Record No. 1] is **DENIED** without prejudice; and

(2)  this action will be **DISMISSED**, *sua sponte,* from the docket of the Court and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This the 22d day of September, 2005.

_____
JOSEPH M. HOOD, CHIEF JUDGE

Date of Entry and Service:

8